IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL TURNER, et al., etc., )
)
       Plaintiffs, )
)
 v. ) No. 10 C 3593
)
MILLENNIUM PARK JOINT VENTURE, )
LLC, etc., )
)
       Defendant. )

MEMORANDUM OPINION AND ORDER

Paul Turner and Andrew Warren, characterizing themselves as representative plaintiffs in a putative class action, have sued their former employer, Millennium Park Joint Venture, LLC ("Millennium"), charging it with improper tip pooling under the Fair Labor Standards Act ("FLSA," 29 U.S.C. §§201 to 219) as well as violations of the Illinois Minimum Wage Law ("Wage Law," 820 ILCS 105/1 to 105/15) and the Illinois Wage Payment and Collection Act ("Wage Payment Act," 820 ILCS 115/1 to 115/15).[1] Both sides have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 on all counts, and Millennium has alternatively moved under Rule 56(d) "for an order specifying items of damages not genuinely at issue." For the reasons stated in this memorandum opinion and order, Millennium's Rule 56 motion is granted (so that plaintiffs' Rule 56 motion is necessarily denied), with Millennium's Rule 56(d) motion consequently being denied as moot.

---

[1] Both of those state claims are before this Court pursuant to the supplemental jurisdiction provisions of 28 U.S.C. §1367.

This action itself is dismissed.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (<u>Wheeler v. Lawson</u>, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (<u>id</u>.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

One more complexity is added where, as here, cross-motions for summary judgment are involved. Those same principles require the adoption of a Janus-like perspective: As to each motion the nonmovant's version of any disputed facts must be credited. What follows, then, is a summary of the undisputed facts.[2]

---

[2] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion identifies plaintiffs' and Millennium's respective submissions as "P." and "M." followed by appropriate designations: LR 56.1

2

**Factual Background**

Plaintiffs were both hired in 2008 and worked until early 2010 as servers at the Park Grill at Millennium Park ("Park Grill") operated by Millennium (M. St. ¶1,6; M. Mem. Hayes Decl. Ex. 1, 2). All servers' primary duty at Park Grill was to "provide patrons with a great dining experience" (M. St. ¶9). Aside from taking orders and handling checks, servers completed various other set-up functions (including rolling silverware) and closing functions (P. Resp. St. ¶9).

Servers at Park Grill were paid 60% of the minimum wage in effect at the time (P. Resp. St. ¶6), with the remaining 40% being covered under the tip credit provisions of the Wage Law and FLSA (id.) Servers contributed a portion of the tips they received, calculated on the basis of a predetermined percentage of sales, to Park Grill's tip pool (id.).

In 2006, both before and during a management meeting to discuss suggestions on how to improve operations, Millennium's servers voiced their desire for Park Grill to hire a separate silverware roller (M. St. ¶12). As a result of that discussion, the servers voted unanimously that management should hire such silverware rollers and gave management a standing ovation for

---

statements as "St. ¶ --," responsive statements as "Resp. St. ¶ --," and memoranda as "Mem. --," "Resp. Mem. --" and "Reply Mem. --."

agreeing to do so (id.).³  Millennium indeed hired silverware rollers at Park Grill (id.), and they receive $3 per day per server from the tip pool (id.).

### Tip Pooling Under FLSA

Congress brought restaurant workers under the umbrella of FLSA's overtime provisions in 1966 by creating the "tip credit," which allows employees to credit up to 50 % of the tips received by a "tipped employee" toward the required minimum wage (29 U.S.C. §203(m); S. Rep. No. 89-1487, at 12-13 (1966)).  FLSA defines a tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more

---

³ Those facts are purportedly "denied" by Plaintiffs in their Resp. St. ¶12.  Not only is that asserted denial unsupported by the citation of any evidence to contradict Millennium's statement that is based on the affidavit of a manager (Floersheimer Aff. ¶¶10-12), but it cannot be viewed as having been advanced in the subjective and objective good faith required by Rule 11(b)--it will be remembered that neither plaintiff became employed by Millennium until 2008, so by definition they have no in-person knowledge of the 2006 event, and they give no indication of having sought to look into the matter.  But Rule 56 requires more.  As Swanson v. Vill. of Lake in the Hills, 962 F.2d 602, 603-04 (7th Cir. 1992) (like countless other cases) confirms:

>   However, the non-moving party may not simply rest on its pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact.

More particularly, LR 56.1(b)(3)(B) demands that "a response to each numbered paragraph" must include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon."  Plaintiffs provide no such references.  For these reasons, as it is entitled to do (Cracco v. Vitran Express, Inc., 559 F.3d 625, 632-33 (7th Cir. 2009)), this Court disregards plaintiffs' denials.

4

than $30 a month in tips" (29 U.S.C. §203(t)), and the same section allows tip pooling "among employees who customarily and regularly receive tips."

This case, as many have, revolves around the interpretation of the phrase "customarily and regularly receive tips." Such cases generally arise where, as here, some employees object to the inclusion of other employees in a tip pool. Because our Court of Appeals has not directly addressed the meaning of the relevant statutory provisions, this Court is called on to write on a clean slate so far as this circuit is concerned.

Plaintiffs suggest that the statute be read as requiring an employee to have some customer contact to qualify as an employee who customarily and regularly receives tips (P. Resp. Mem. 1-8). Millennium, on the other hand, makes the somewhat circular argument that because the relevant employees here did in fact receive tips from the tip pool, they should necessarily be counted as employees who "customarily and regularly" receive tips (M. Mem. 12-15). This Court is unpersuaded by either result-driven perspective. Instead it finds a different interpretation to be called for by FLSA's text, legislative history and related regulatory pronouncements.

This Court reads "customarily and regularly receives tips" literally: Any employee comes within that provision if that employee receives tips, either directly from customers or from

5

other employees who themselves receive direct customer tips, on a regular basis.[4] That approach then looks to the amount of tips given to an employee by a customer or given freely by another employee by agreement, not solely as the result of a management directive or requirement (although management may, of course, administer a tip pool that implements such an arrangement). As explained below, such a reading is wholly in sync with the relevant legislative materials.

In determining the tips that should be treated as having been "customarily and regularly" received by an employee from a tip pool, a critical fact to consider is whether the arrangement is an ongoing one based on a voluntarily-arrived-at understanding. Here is 29 C.F.R. §531.54 (emphasis added) dealing with that subject:

> Where employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them....Similarly, where an accounting is made to an employer for his information only or in furtherance of a pooling arrangement whereby the employer redistributes the tips to the employees upon

---

[4] This Court is mindful that other courts have arrived at different interpretations of the relevant statutory provisions, sometimes requiring customer contact as a condition of being entitled to share in tips given directly to other employees, or sometimes (at the other end of the spectrum) imposing a tip-sharing obligation even in the absence of agreement by the direct-recipient employee. Having considered such other opinions carefully, this Court concludes that its interpretation most closely adheres to the statute, its regulations and the implementation of both.

6

> some basis to which they have <u>mutually agreed among themselves</u>, the amounts received and retained by each individual as his own are counted as his tips.

That regulation would not countenance a situation where, in sharp contrast to what took place at Park Grill, an employer forces its employees receiving tips directly from customers to contribute to a tip pool.

Importantly, the waiter-busboy example in that regulation comports with the reality of customer service. And that is strongly reinforced (indeed, in expanded scope) by the Senate Committee Report discussing the 1974 amendments to FLSA, S. Rep. No. 93-690, at 43 (1974):

> Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting or sharing tips with employees who customarily and regularly receive tips - <u>e.g.</u>, waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips - <u>e.g.</u>, janitors, dishwashers, chefs, laundry room attendants, etc. In establishments where the employee performs a variety of different jobs, the employee's status as one who "customarily and regularly receives tips" will be determined on the basis of the employee's activities over the entire workweek.

In the context of a restaurant operation, note the contrast between the listed occupations where tip-sharing is said to be permitted (among waiters, waitresses and busboys) and those where it is not (involving dishwashers and chefs). Although each of the listed occupations other than waitpersons refers to someone

7

who does not share the same customer contact as the waitperson and who is not in a category that customers normally think of as the direct recipient of a tip, the busboy performs a task that would have to be carried out by the waitperson if there were no busboy, correspondingly cutting down on the time and effort the waitperson would be able to spend on direct customer service (and to earn tips as a result). And of course that is obviously not so as to, say, a restaurant dishwasher or chef.

So in real world terms it is readily understandable that employees receiving tips directly from customers may agree to share tips when they believe that the employees with whom they share help them to serve the customers better and more fully and thus to obtain additional tips and sweeten the pot for everyone. Just so with a silverware roller, who performs work that would otherwise be a waitperson function. Little wonder, then, that the Park Grill servers not only voted for the hiring of such personnel but gave management a standing ovation for acceding to that vote.

It is thus easy to apply the literal reading of the statute, buttressed as it is by the legislative history and the applicable regulation, to the silverware rollers at Park Grill. As is typically the case with busboys as well, there is no suggestion that the silverware rollers received any tips directly from customers. That leaves the question whether the tips that they

received from the tip pool meet the test that the employees who directly received the tips agreed to the sharing arrangement.

True enough, the 2006 vote and the standing ovation by the waitstaff did not, on the evidence presented to this Court, also expressly include a vote on tip sharing with those to be hired as silverware rollers. But just as agreements can be express or implied in other contexts, the tip pool context often involves implied agreements. Evidence of such an implied agreement can involve either the specifics of a particular workplace or common industry practice.[5]

While there is no evidence of common industry practice in this case, the situation at Park Grill itself strongly confirms the concept of an implied agreement: the hiring of the silverware rollers at the specific urging of the servers themselves, accompanied by the institution and ongoing acceptance of the tip pooling arrangement without cavil by the servers over an extended period of years (M. St. ¶12). It ill behooves the plaintiffs

---

[5] Looking at common practice is supported by the legislative history that generally sets out certain occupations, such as waiters and bartenders, as examples of tipped employees. At the time of the passage of the legislation, the practice of sharing tips among those employees was common practice throughout the country. Further support comes from agency materials discussing enforcement of tip pooling. For example, in one opinion letter the agency focused on "common practice in the locality in this type of establishment" in determining whether barbacks (bartenders' assistants) can appropriately share tips with bartenders (see DOL Opinion Letter, 2009 WL 649014 (Jan. 15, 2009)).

9

here, who came onto the scene two years after the institution of the arrangement and who throughout their employment derived the benefits that had been perceived by their predecessors in asking for that arrangement, to seek to recoup the cost ($3 per day to the silverware rollers) that was the modest price for enabling plaintiffs to attain those benefits during their term as employees.[6]

This Court further holds as a matter of law that the very nature of the parties' employment relationship is such that no individual employee's separate agreement to the established arrangement was necessary to hold plaintiffs to it. Instead the agreement was implied from the fact of plaintiffs having been hired with that across-the-board understanding in place, in much the same way that an existing collective bargaining agreement binds new hires into the bargaining unit (cf. Geary v. Telular Corp., 341 Ill.App.3d 696, 698-700, 798 N.E.2d 128, 131-32 (1st Dist. 2003)).

With the word "chutzpah" having found its way into all contemporary English-language dictionaries through common usage, that label may provide the most appropriate characterization of

---

[6] During his Millennium employment plaintiff Turner received income from tips at an average rate of at least $25 per hour, while plaintiff Warren (who worked fewer hours than Turner) received tip income in the same general ballpark.

plaintiffs' effort to call the FLSA to their aid[7]--and then to attempt to elevate themselves to the status of class representatives.[8] Instead, Millennium succeeds on its motion for summary judgment on plaintiffs' FLSA count because the silverware rollers at Park Grill were permissibly included in the tip pool. This opinion turns then to plaintiffs' efforts to call the two Illinois statutes to their aid.

**State Law Claims**

Plaintiffs also urge that Millennium's inclusion of silverware rollers in Park Grill's tip pool was illegal under both Illinois' Wage Law and its Wage Payment Act. Plaintiffs contend that Millennium's tip pooling practices are illegal under the first of those statutes because it incorporates the tip pooling restrictions of FLSA (P. Resp. Mem. 8-9) and that the practices are illegal under the second statute because the servers had an agreement with Millennium that their wages would not be used to pay, through the tip pool, any employees who were not properly considered "tipped employees" by FLSA (P. Resp. Mem.

---

[7] In that respect, this Court was reminded, when this opinion was in the process of transcription, that a Paul Turner (no doubt the same person) had been the unsuccessful plaintiff in an earlier case also assigned (by sheer chance) to this Court's calendar and also advancing FLSA claims as well as others: Turner v. The Saloon, Ltd., No. 05 C 4595, with opinions reported at 491 F.Supp.2d 753 and 491 F.Supp.2d 767 (N.D. Ill. 2007).

[8] At a minimum their potential for satisfying the Rule 23(a) requirements of typicality and adequacy of representation would have seemed to be highly problematic.

11

10-11).

Essentially plaintiffs thus attempt to import FLSA law into state law. Even apart from any conceptual problems with that effort, it need not be addressed directly because even if FLSA requirements were somehow imported into state law, the claims would fail under this Court's earlier-set-out interpretation of FLSA. Hence Millennium's motion for summary judgment on the state law claims is granted as well.[9]

### Conclusion

With no genuine issue of material fact having been identified, Millennium is entitled to a judgment as a matter of law on all of plaintiffs' claims. Millennium's Rule 56 motion is granted in its entirety, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 7, 2011

---

[9] Because Millennium has thus prevailed on the state law counts, this opinion need not address Millennium's alternative motion to limit damages under those counts.